**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No.: 9:26-cv-80715-EA**

---

Skatteforvaltningen,

                Plaintiff,

    vs.

470 South Ocean Boulevard Trust, Jonathan E.
Gopman, *in his capacity as trustee for the 470 South
Ocean Boulevard Trust*, and Quadrant Holdings Inc.,

                Defendants.

---

## SKATTEFORVALTNINGEN'S EXPEDITED MOTION TO STAY

Plaintiff Skatteforvaltningen ("SKAT"), by and through its undersigned counsel, hereby respectfully moves this Court for an order staying this action until resolution of the action *Skatteforvalningen v. 470 S. Ocean Boulevard Tr.*, 25-cv-01498-NRB, pending before the United States District Court for the Southern District of New York (the "New York Court"), which action involves the exact issues at play here.  An expedited ruling is needed by August 17, 2026—the day by which defendants 470 South Ocean Boulevard Trust and Jonathan E. Gopman's response to SKAT's complaint is due—to, prevent unnecessary motion practice, preserve judicial resources, and eliminate the risk of inconsistent rulings.

### PRELIMINARY STATEMENT

Luke McGee is a judgment debtor who owes SKAT approximately $164 million for breaching a settlement agreement that resolved SKAT's civil claims against him stemming from a sophisticated dividend-withholding tax refund fraud he and his co-conspirators perpetrated against the Danish government.  In order to shield his assets from SKAT, McGee transferred approximately $30 million through the 470 South Ocean Boulevard Trust (the "470 Trust") into

an 8,804-square foot, oceanfront townhouse located in Palm Beach, Florida (the "Palm Beach Mansion") to improperly exploit Florida's homestead exemption.  Prior to obtaining its judgment against McGee in the New York Court (the "Judgment"), SKAT filed claims in this Court against the 470 Trust and Jonathan Gopman ("Gopman"), the 470 Trust's trustee, seeking, among other things, to avoid McGee's transfer to the 470 Trust to purchase the Palm Beach Mansion (the "Homestead Action").  In response, the 470 Trust and Gopman successfully argued that the Homestead Action should be heard before the New York Court, where the action (the "New York Homestead Action") was transferred and remains pending, and where the 470 Trust and Gopman have raised the Florida homestead exemption as a defense to SKAT's claims.

Now that the New York Court has issued the Judgment, the 470 Trust and Gopman no longer like the forum they themselves chose and have made every effort to reverse course and litigate in Florida the issues pending before the New York Court, including filing a motion in the New York Court seeking to retransfer the case back to Florida.  As part of those efforts, the 470 Trust and Gopman recorded and sent SKAT a "Notice of Homestead," claiming that Quadrant Holdings Inc. ("Quadrant") had provided a $3.75 million loan in exchange for a mortgage over the Palm Beach Mansion and asserting that SKAT was required to commence this action within 45 days after the mailing of the Notice of Homestead, or risk Quadrant or any buyer taking the Palm Beach Mansion "free and clear" of SKAT's judgment lien.  SKAT filed this action in response to the Notice of Homestead and to preserve its rights during the pendency of the New York Homestead Action.

Defendants should not be rewarded for their forum-shopping machinations, and the Court should stay this action pending resolution of the New York Homestead Action.  Such a stay would allow the New York Court—which is now intimately familiar with the parties and

2

issues—to resolve the homestead issue at the heart of this case and would avoid the significant risk of inconsistent rulings between this Court and the New York Court on that issue.  And staying this action would not prejudice defendants—the 470 Trust and Gopman sought to litigate the homestead issue in the New York Court in the first place and Quadrant will be free to litigate the priority of its purported interest in the Palm Beach Mansion if SKAT succeeds in the New York Homestead Action.  The only prejudiced party is SKAT, which has now been forced to file yet another action to preserve its rights in response to the 470 Trust's and Gopman's forum-shopping efforts.

## BACKGROUND

### McGee's fraud on SKAT

From 2012 to 2015, McGee and his co-conspirators Matthew Stein ("Stein") and Jerome Lhote ("Lhote") engaged in a massive fraud on SKAT that involved U.S. pension plans submitting claims for refunds for taxes supposedly withheld at source from dividends that Danish companies issue to their shareholders.  *See Stein v. Skatteforvaltningen*, No. 23-cv-02508, ECF No. 167 ¶¶ 9-10 (S.D.N.Y.).  Over the course of the fraud, McGee and his co-conspirators defrauded SKAT of approximately DKK 2.9 billion (approximately $452 million at the current exchange rate) in purported refunds for taxes they never paid or owed.

In summer 2015, the U.K. government alerted SKAT to the fraud, prompting SKAT to halt all dividend-withholding tax refund payments.  SKAT subsequently began its investigation of the fraud, as did the Danish Public Prosecutor for Serious Economic and International Crime ("SØIK").

**The Settlement Agreement**

In 2017, McGee, Stein, and Lhote—aware of Denmark's civil and criminal investigations into their fraud—approached SKAT to negotiate a settlement. *Stein v. Skatteforvaltningen*, No. 23 CIV. 2508 (NRB), 2025 WL 2695441, at *1 (S.D.N.Y. Sept. 22, 2025). Discussions continued through the end of 2018 and into early 2019, at which point SKAT made clear that, despite the request by McGee, Stein and Lhote, it would not condition a settlement on their immunity from potential criminal charges in Denmark. *See id.* at *5. On May 28, 2019, McGee, Stein, Lhote and others executed a settlement agreement resolving SKAT's civil claims against them regarding the fraud (the "Settlement Agreement"). *Id.* at *6.

Under the Settlement Agreement, McGee, Stein and Lhote agreed jointly and severally to repay SKAT the "net proceeds" received from SKAT's payment of their fraudulent refund applications. *Id.* at *11-12. The Settlement Agreement established a preliminary settlement amount of DKK 1.55 billion, subject to increase if the net proceeds were, in fact, more than that amount. *Id.* at *12. McGee, Stein, Lhote and other settling parties paid DKK 950 million of the preliminary settlement amount. McGee, Stein and Lhote were required to pay the remaining DKK 600 million, plus a true-up amount, by May 28, 2023. *Id.* at *12-13, *43.

**McGee and his co-conspirators are indicted in Denmark**

In September 2019, North Channel Bank—which McGee, Stein and Lhote purchased for the purpose of perpetrating their fraud on SKAT—pled guilty to fraud in Denmark for its role in the scheme. *See id.* at *4 n.12. McGee was preliminarily charged in June 2020 and indicted, along with Stein and Lhote, in April 2021. *Id.* at *10. The criminal trial of McGee, Stein and Lhote was due to commence in Denmark on June 2, 2026. McGee failed to appear for trial, despite agreeing to do so, and an international warrant was issued for his arrest.

4

**McGee breaches the Settlement**
**Agreement and is found liable following trial**

On March 24, 2023, instead of meeting their obligation to pay to SKAT the remaining payment due under the Settlement Agreement by May 28, 2023, Stein and Lhote commenced an action against SKAT in this Court (the "Maple Point Action"). *See Stein*, ECF No. 1. SKAT filed counterclaims against Stein and Lhote and joined McGee, asserting multiple breach of contract claims and seeking over DKK 1 billion owed under the Settlement Agreement as a result of their breach. *See, e.g.*, *Stein*, ECF No. 48.

On September 22, 2025, following a bench trial in the Maple Point Action, the New York Court found in favor of SKAT on all counts and held that judgment should be entered for SKAT on its breach of contract counterclaims against McGee, Stein and Lhote, jointly and severally, in the amount of approximately DKK 1 billion. *See Stein*, 2025 WL 2695441, at *43. On October 9, 2025, the Clerk of Court entered the Judgment in SKAT's favor in the amount of approximately $164 million. *See Stein*, ECF No. 221. The Judgment did not extinguish, nor did it replace, the Settlement Agreement.

**McGee purchases the Palm Beach Mansion**

Unbeknownst to SKAT, shortly after McGee's April 2021 Danish criminal indictment, McGee engaged in a flurry of financial maneuvers in an effort to become judgment-proof and stymie SKAT's ability to enforce the Settlement Agreement and any judgment against him. As part of those efforts, McGee established the 470 Trust as a vehicle to transfer approximately $30 million into the Palm Beach Mansion—an 8,804-square foot oceanfront townhouse located at 470 S. Ocean Boulevard in Palm Beach, Florida—to improperly exploit Florida's homestead exemption. McGee admits he moved to Florida, in part, because of the state's "favorable asset

5

protection laws" and his payment obligation to SKAT under the Settlement Agreement. *Stein*, ECF No. 191 at 249:15-251:7.

**The proceedings before this Court**

On July 9, 2024, SKAT commenced the Homestead Action in this Court seeking, among other things, to avoid McGee's transfer of approximately $30 million through the 470 Trust to purchase the Palm Beach Mansion. *Skatteforvaltningen v. 470 S. Ocean Blvd. Tr.*, No. 9:24-cv-80837, ECF. No. 1 (S.D. Fla.). On September 20, 2024, the 470 Trust and Gopman filed a motion to dismiss SKAT's claims based on, *inter alia*, Florida's homestead exemption and improper venue due to the Settlement Agreement's forum section clause. *470 S. Ocean Blvd. Tr.*, ECF No. 19. In their motion to dismiss, the 470 Trust and Gopman acknowledged that SKAT's "claims without question exist for the sole purpose of attempting to ensure the collectability of a judgment it hopes to obtain in the" Maple Point Action "to enforce the Settlement Agreement" and accused SKAT of "vexatiously multiply[ing] litigation against McGee" to "conceal its conduct from" this Court by asserting its claims in Florida. *Id.* at 15.

On February 21, 2025, this Court granted defendants' motion to dismiss solely on venue grounds, denied all other pending motions as moot, and ordered the case transferred to the New York Court (the "Transfer Order"). *See Skatteforvalningen v. 470 S. Ocean Boulevard Tr.*, No. 24-80837-CV, 2025 WL 1435794, at *4 (S.D. Fla. Feb. 21, 2025). In the Transfer Order, this Court accepted defendants' argument that venue was improper under the Settlement Agreement's forum selection clause because it is mandatory and requires that "all matters relating to [the Settlement Agreement]" be resolved in New York. *Id.* at *2.

6

**McGee's and defendants' attempts to manufacture venue in Florida**

Since the New York Court entered the Judgment on October 9, 2025, McGee—along with the entities he used to shield his assets from SKAT (the "McGee Entities")—has gone to great lengths to manufacture jurisdiction in Florida for SKAT's enforcement efforts in Florida. Specifically, in negotiating a tolling agreement of SKAT's fraudulent transfer claims against the McGee Entities (the "Tolling Agreement"), McGee and the McGee Entities negotiated a provision whereby SKAT agreed not to file any claims during the tolling period.  After the parties entered the Tolling Agreement and during the tolling period, the McGee Entities filed a declaratory judgment action against SKAT in Florida state court, seeking, in sum and substance, a declaration that SKAT's tolled claims lack merit.[1]

Since the start of SKAT's judgment enforcement against McGee, defendants and the McGee Entities have repeatedly sought to coax SKAT into recording the Judgment in the official records of Palm Beach County on a time frame that suited McGee's interests.  It is now clear that those efforts were an attempt to deprive the New York Court of jurisdiction to resolve the homestead issue at the heart of the Homestead Action—after recording the certified Judgment in Palm Beach County, SKAT received a "Notice of Homestead" from defendants, in which Gopman claimed the Palm Beach Mansion "as homestead exempt from levy and execution under Section 4, Article X of the [Florida] State Constitution."  (Declaration of Daniel H. Weiner dated July 7, 2026, Ex. 1 at 1.)  In the Notice of Homestead, Gopman explained that Quadrant Holdings Inc.—an entity closely tied to McGee—had provided a $3.75 million loan to the 470 Trust in exchange for a mortgage over the Palm Beach Mansion, which transaction was set to

---

1.  On May 1, 2026, SKAT removed the McGee Entities' declaratory judgment action to this Court.  On June 3, 2026, in light of the pendency of that action and the expiration of the Tolling Agreement, SKAT filed its fraudulent transfer claims against the McGee Entities in this Court.

close on April 30, 2026, *i.e.*, the same day as a conference before the New York Court during which the 470 Trust and Gopman withheld the existence of the Notice of Homestead and the mortgage from the New York Court. (*Id.* at 1-2.)

Gopman further certified that the Judgment purportedly "does not constitute a valid lien on the" Palm Beach Mansion and that, pursuant to Section 222 of the Florida Statutes, SKAT is required within 45 days after the mailing of the Notice of Homestead to commence a declaratory judgment action in Florida state court to determine the Palm Beach Mansion's homestead status—*i.e.*, the exact issue before the New York Court by way of the Homestead Action—lest Quadrant or any buyer take the Palm Beach Mansion "free and clear" of SKAT's judgment lien. (*Id.* at 2.) Gopman executed the Notice of Homestead on April 20, 2026 and mailed it to SKAT on May 1, 2026, the day after the New York Court's April 30 Conference. (*Id.* at 3.)

On June 15, 2026, SKAT commenced this action "in response to the 470 Trust and Gopman's serial forum shopping efforts and to preserve its rights with respect to the Palm Beach Mansion during the pendency of the Homestead Action pending before the New York Court." (ECF No. 1, ¶ 1.)

## LEGAL STANDARD

This Court has the "inherent authority to stay proceedings pending resolution of a related matter in another court." *Ali v. 7-Eleven, Inc.*, No. 22-20328-CIV, 2022 WL 713665, at *1 (S.D. Fla. Mar. 10, 2022); *see Georgia ex. rel. Olens v. McCarthy*, 833 F.3d 1317, 1321 (11th Cir. 2016) ("[F]ederal courts are afforded broad discretion in determining whether to stay or dismiss litigation in order to avoid duplicating a proceeding already pending in another federal court." (quotations and citation omitted)). "A stay is particularly appropriate, and within the court's sound discretion, where," as here, "the outcome of another case may substantially affect or be

dispositive of the issues in a case pending before a district court," which "is especially true where the other case is proceeding in another federal court." *Suite 225, Inc. v. Lantana Ins., Ltd.*, No. 12-80409-CIV, 2013 WL 12171122, at *1 (S.D. Fla. Jan. 29, 2013) (quotation marks and citation omitted); *see, e.g.*, *Luv N' Care, Ltd. v. Hakim*, No. 24-CV-22236, 2024 WL 4948976, at *6 (S.D. Fla. Dec. 3, 2024) (staying action to allow related federal case to resolve potentially dispositive issue and to avoid the risk of inconsistent rulings).

In exercising their discretion to stay, courts consider several factors including "prejudice to the non-moving party, whether the requested stay would simplify and clarify the issues, and whether the potential stay would reduce the burden of litigation on the parties and on the court." *Fridman v. Collection LLC*, No. 18-CV-20348-UU, 2019 WL 13237812, at *1 (S.D. Fla. July 23, 2019) (quotation marks and citation omitted).  Here, each of those factors weigh heavily in SKAT's favor.

**ARGUMENT**

The Court should exercise its discretion and stay this action to allow the New York Court to resolve whether the homestead exemption applies to the Palm Beach Mansion.  As set forth above, after SKAT filed the Homestead Action in this Court, the 470 Trust and Gopman successfully moved to transfer that action to the New York Court, where it remains pending. Now unhappy with their choice of venue, the 470 Trust and Gopman have made every attempt to reverse course and have the homestead issue heard before a Florida court, including by enlisting Quadrant and sending SKAT the Notice of Homestead.  The sole reason SKAT initiated this action was to preserve its rights with respect to the Palm Beach Mansion while the New York Court resolves "*precisely* the same issues" at the heart of both the Homestead Action and this action.  *Elias LLC v. Virage Cap. Mgmt., LP*, No. 23-22752-CIV, 2023 WL 6534486, at *3 (S.D.

9

Fla. Sept. 15, 2023) (emphasis in original).  Allowing this later filed action—concerning the same property and the same homestead dispute—to proceed "would be a colossal waste of judicial resources" and reward the 470 Trust and Gopman's forum-shopping spree.  *See Georgia ex. rel.*, 833 F.3d at 1321.

Moreover, a stay is necessary to not only clarify the homestead issue, but also to eliminate the risk of inconsistent rulings.  Proceeding in both this Court and the New York Court would invite conflicting rulings on the homestead issue, undermining judicial integrity and creating uncertainty for the parties.  *See Elias,* 2023 WL 6534486, at *4 ("[A]llow[ing] the first-filed Texas Action to resolve will clearly avoid the cost and resources that would be expended litigating the same issues in two different courts, as well as the potential for inconsistent results.") (internal quotations and citations omitted); *see also Hunters Run Prop. Owners Ass'n, Inc. v. Centerline Real Est., LLC*, No. 20-CIV-80842-RAR, 2020 WL 13379285, at *1 (S.D. Fla. Aug. 12, 2020) (granting defendant's motion to stay where such finding promotes "the interests of justice and judicial economy, including avoiding inconsistent results, the duplication of efforts, and the waste of judicial resources").  The Palm Beach Mansion's homestead status should be determined by the New York Court, which has grown intimately familiar with the parties and the underlying claims, and to which the 470 Trust and Gopman sought the Homestead Action transferred in the first place.  *Georgia ex. rel.*, 833 F.3d at 1321 ("[T]he Sixth Circuit is the obvious court to proceed to decision because it is significantly farther along the decisional path than we are."); *Morrissey v. Subaru of Am., Inc.*, No. 1:15-CV-21106-KMM, 2015 WL 4512641, at *2 (S.D. Fla. July 24, 2015) ("A court may consider the progress of a related action in evaluating the lawfulness of a stay.").

10

Staying this action would not prejudice defendants.  Again, the 470 Trust and Gopman successfully argued that the New York Court, not this Court, should resolve SKAT's claims regarding the Palm Beach Mansion, and therefore will not be prejudiced in litigating their defense in the forum they chose.  This Court was fully aware that the homestead exemption was the primary defense in the case, yet decided to transfer the case to the New York Court to decide that and related issues.  Nor will Quadrant be prejudiced—Quadrant need not be a participant in a legal dispute concerning the applicability of Florida's homestead protections that it otherwise would not have to defend.  To the extent SKAT is unsuccessful in the New York Homestead Action, this action will fall away.  If SKAT is successful, Quadrant will be free to litigate the priority of its purported interest in the Palm Beach Mansion before this Court.

Finally, SKAT's requested stay would not be immoderate.  The parties have already litigated several discovery issues in the New York Homestead Action, and Gopman and the 470 Trust have moved for a pre-motion conference for permission to move to dismiss SKAT's claims based on, among other things, the homestead exemption.  Resolution of that issue provides a "specific resolution point," *Morrissey*, 2015 WL 4512641, at *2—*i.e.*, whether SKAT's equitable lien and fraudulent transfer claim theories are viable.  The New York Court's assessment of the homestead status of the Palm Beach Mansion will "substantially affect or be dispositive of the issues" presented in this case, *Suite 225, Inc.*, 2013 WL 12171122, at *1.

## CONCLUSION

For the reasons set forth above, SKAT respectfully requests that the Court grant its expedited motion to stay this action pending the resolution of the New York Homestead Action.

## <u>LOCAL RULE 7.1 PRE-FILING CONFERENCE CERTIFICATION</u>

I HEREBY CERTIFY that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

Dated: Miami, Florida
     July 7, 2026

Respectfully submitted,

HUGHES HUBBARD & REED LLP

By:  Daniel H. Weiner
Daniel H. Weiner
Fla. Bar No. 71112
201 South Biscayne Boulevard
Miami, Florida 33131-4332
(305) 358-1666 (t)
(305) 371-8759 (f)

*Counsel for Plaintiff Skatteforvaltningen*
*(Customs and Tax Administration of the*
*Kingdom of Denmark)*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 7, 2026, the foregoing motion was served via electronic mail to 470 South Ocean Boulevard Trust and Jonathan E. Gopman's counsel at vanessa.johannes@foley.com, andrea.cunha@foley.com, and rpotts@foley.com, and to Quadrant Holdings Inc.'s counsel at kevin.murphy@wg-law.com.

<u>/s/ Daniel H. Weiner</u>
Daniel H. Weiner